# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

DAVID ALLEN LUCAS,

                    Petitioner,

v.

RON DAVIS, Warden of San Quentin State Prison,

                    Respondent.

Case No.:  15cv1224-GPC (WVG)

**ORDER:**

**(1) FINDING SUBCLAIMS 2.E.7 AND 7.E.1 EXHAUSTED;**

**(2) GRANTING PETITIONER'S MOTION TO STAY THE FEDERAL CASE PENDING EXHAUSTION OF REMEDIES [ECF No. 62]; AND**

**(3) SETTING DEADLINES**

On January 13, 2017, the parties filed a Joint Statement regarding exhaustion and a proposed briefing schedule on stay and abeyance, and agreed that the federal Petition is a mixed petition, as it contains both exhausted and unexhausted claims.  (ECF No. 56.)  In the Joint Statement, the parties also agreed on and stipulated to the exhaustion status of all but two claims raised in the federal Petition, which the Court addresses below in the instant Order.  On February 16, 2017, Petitioner filed a Motion to stay the federal proceedings pending the exhaustion of remedies, which included a memorandum of points and

authorities.  (ECF No. 62.)  On March 1, 2017, Respondent filed an Opposition to the motion, and on March 15, 2017, Petitioner filed a Reply.  (ECF Nos. 63, 66.)

In the joint statement, the parties stated their agreement that "unless the Court desires oral argument on the disputed claims and/or Petitioner's motion for a *Rhines* stay, both questions may be decided on the pleadings."  (ECF No. 56 at 7.)[1]  The Court finds that the issues presented here are suitable for decision without argument.

For the reasons discussed below, and based on the arguments presented in the pleadings, the Court **FINDS** that subclaims 2.E.7 and 7.E.1 are both exhausted, **GRANTS** Petitioner's motion to stay the federal case pending the exhaustion of state remedies, and **SETS** deadlines as outlined below.

## I. PROCEDURAL HISTORY

In a Consolidated Information filed July 11, 1988, Petitioner was charged with first degree murder in the deaths of Suzanne Jacobs, Colin Jacobs, Gayle Garcia, Rhonda Strang, Amber Fisher, and Anne Swanke in violation of Cal. Penal Code § 187, the attempted murder of Jodie Santiago Robertson in violation of Cal. Penal Code §§ 187 and 664, and the kidnappings of Swanke and Robertson in violation of Cal. Penal Code § 207(a).  (CT 4107-11.)  The Consolidated Information also charged that Petitioner had used a knife in each crime within the meaning of Cal. Penal Code § 12022(b), and that he had inflicted great bodily injury on Swanke and Robertson in the commission of their kidnappings, and on Robertson in the commission of the attempted murder, within the meaning of Cal. Penal Code § 12022.7.  (Id.)  Petitioner was also charged with the special circumstance of multiple murder under Cal. Penal Code § 190.2(a)(3), and it was alleged that he had a serious prior felony conviction for rape.  (Id.)

On June 21, 1989, after the guilt phase proceedings and deliberations, the jury found Petitioner guilty of the first degree murders of Suzanne Jacobs, Colin Jacobs and Anne

---

[1] When citing to documents filed with the Court's Electronic Case Filing ("ECF") system, the Court will refer to the page numbers assigned by that system.

Swanke, the attempted murder of Robertson and the kidnappings of Swanke and Robertson. (CT 14232-33, 14236-39.) The jury was unable to reach a verdict with respect to the Strang and Fisher murder charges and acquitted Petitioner of the murder of Garcia. (CT 5563-64, 14234-35.) The jury found true the allegations that Petitioner used a deadly and dangerous weapon in the murders and kidnappings and that he inflicted great bodily injury on Swanke and Robertson. (CT 14232-33, 14236-39.) The jury also found true the special circumstance charge of multiple murder. (CT 14240.) On August 2, 1989, after the penalty phase proceedings and deliberations, the jury returned a verdict of death. (CT 14861.) On September 19, 1989, Petitioner was sentenced to death. (CT 14998.)

On automatic appeal of his conviction and judgment to the California Supreme Court, Petitioner filed an opening brief on August 15, 2003. (Lodgment No. 6.) Petitioner filed a reply brief on May 21, 2008, and on May 5, 2014, filed a supplemental brief prior to oral arguments. (Lodgment No. 8.) The California Supreme Court affirmed Petitioner's conviction and sentence in a written decision issued on August 21, 2014. People v. Lucas, 60 Cal. 4th 153 (2014), disapproved of by People v. Romero, 62 Cal. 4th 1 (2015). The petition for a writ of certiorari was denied by the United States Supreme Court on June 1, 2015. Lucas v. California, ___ U.S. ___, 135 S.Ct. 2384, No. 14-9137 (2015).

On November 6, 2008, while the direct appeal was pending, Petitioner filed a habeas petition with the California Supreme Court. (Lodgment No. 12.) On March 22, 2010, Petitioner filed a reply brief. (Lodgment No. 15.) On November 24, 2015, the California Supreme Court denied the habeas petition without an evidentiary hearing. (Lodgment No. 16.)

On January 13, 2017, the parties filed a Joint Statement stipulating to the exhaustion status of all but two claims raised in the federal Petition, outlining their positions on the two disputed subclaims, and agreeing that the Petition contained both exhausted and unexhausted claims. (ECF No. 56.) On February 16, 2017, Petitioner filed a Motion ["Mot."] to stay the federal proceedings pending the exhaustion of remedies, which included a memorandum of points and authorities. (ECF No. 62.) On March 1, 2017,

Respondent filed an Opposition ["Opp."] to the motion for stay and abeyance. (ECF No. 63.) On March 15, 2017, Petitioner filed a Reply. (ECF No. 66.)

## II. DISCUSSION

### A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." Picard v. Connor, 404 U.S. 270, 275 (1971).

"The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis." Weaver v. Thompson, 197 F.3d 359, 364 (9th Cir. 1999), citing Duncan v. Henry, 513 U.S. 364, 365 (1995) and Correll v. Stewart, 137 F.3d 1404, 1411-12 (9th Cir. 1998); see also Picard, 404 U.S. at 276 ("We emphasize that the federal claim must be fairly presented to the state courts. . . .The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.")

The parties agree that eleven claims or subclaims in the federal Petition remain unexhausted, including Claims 10.D, 12, 13.B.2, 13.B.5, 13.B.6, 35.M, 50.H, 50.L, 50.M, 52 and 53, but "do not agree as to whether subclaims 2.E.7 and 7.E.1 are exhausted; Respondent believes they are not, and Petitioner believes they are." (ECF No. 56 at 2.) Based on the parties' stipulation, the Court found Claims 10.D, 12, 13.B.2, 13.B.5, 13.B.6, 35.M, 50.H, 50.L, 50.M, 52 and 53 unexhausted and took the disputed claims under submission. (ECF No. 57.)

///

1        **1.    Claim 2.E.7**

2            In the federal Petition, subclaim 2.E.7 is entitled: "The Fingerprint Evidence Should

3    Have Been Excluded Under the *Daubert[2]/Kumho[3]* Standard."  (ECF No. 45 at 202.)  In this

4    subclaim, Petitioner recites the standard and asserts that "the expert handprinting evidence

5    introduced against him at trial should have been precluded by *Daubert* and *Kumho* because

6    the methodology underlying the development of the fingerprint evidence was unreliable

7    and scientifically invalid," and points out that "[s]ince the *Daubert/Kumho* test is more

8    liberal in favor of admissibility, any evidence that cannot satisfy *Daubert* also cannot

9    satisfy *Kelly*, *a fortiori*.  *Leahy*, 8 Cal. 4th at 595, 603."  (<u>Id.</u> at 203 and n.80.)

10           Petitioner maintains that he exhausted this contention by raising it in the opening

11   brief on direct appeal, as Claim 2.5.4, and in that claim "discussed the *Daubert* and *Kumho*

12   decisions and their impact on the admissibility of expert scientific evidence in state and

13   federal court."  (ECF No. 56 at 5.)  Respondent argues that "Lucas did not fairly present to

14   the California Supreme Court the question of whether *Daubert* and *Kumho* required

15   exclusion of the handprinting evidence," and that in Claim 2.5.4, "Lucas argued he was

16   entitled to a hearing to determine the reliability of the handprinting evidence proffered by

17   the prosecution–known in California as a *Kelly* hearing–and that the failure to provide him

18   that hearing was a denial of his constitutional rights."  (<u>Id.</u> at 3.)  In response to Petitioner's

19   assertion that he cited to both cases on direct appeal, Respondent argues that "the citations

20   to those cases were offered in support of Lucas's argument that he should have been

21   granted a *Kelly* hearing; Lucas never made the separate claim that those cases required the

22   California Supreme Court to conclude, regardless of whether there was a *Kelly* hearing,

23   that the admission of the prosecution's evidence was erroneous."  (<u>Id.</u> at 3-4.)

24           The claim raised on direct appeal, argument 2.5.4, was entitled: "The Judge

25   Erroneously Denied a *Kelly* Hearing."  (ECF No. 35-87 at 47.)  Petitioner asserted that

26   _____

27           [2] <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993)

28           [3] <u>Kumho Tire Co. Ltd. v. Carmichael</u>, 526 U.S. 137 (1999)

Kelly applied to handprinting evidence and alleged that the trial judge erred in precluding defense counsel from challenging the admission of that evidence under Kelly. (Id.) However, in the course of arguing that the trial court erred in failing to allow the defense to challenge the introduction of the handprinting evidence under Kelly, Petitioner also clearly asserted that the handprinting evidence should have been excluded. (Id. at 50-51, 63-67.) Indeed, a review of the state court pleadings reflect that Petitioner's argument that a Kelly hearing was necessary was premised on the assertion that the handprinting evidence would not have been admitted at trial had the trial court properly considered the reliability of the evidence.

Petitioner also clearly presented argument to the California Supreme Court about the relevance of Daubert and Kumho to an analysis of the issue, and specifically asserted that an application of those two cases would have precluded admission of the evidence, as follows: "[S]ince the *Daubert/Kumho* test is more liberal in favor of admissibility, any evidence that cannot satisfy *Daubert* also cannot satisfy *Kelly*, *a fortiori*." (ECF No. 35-87 at 50.) In the direct appeal brief, Petitioner also discussed People v. Leahy, 8 Cal. 4th 587, 594 (1994), in which the state supreme court reaffirmed an intention to apply Kelly in the wake of Daubert, and argued that: "Since the Court explicitly held that *Kelly* is more cautious, conservative, and austere than *Daubert*, it follows that a technique that cannot pass muster under *Daubert* certainly must fail the more stringent *Kelly* test." (ECF No. 35-87 at 50-51, n. 339.) Petitioner also pointed out that in Leahy, the state supreme court utilized several factors articulated in Daubert. (Id.) Petitioner then argued that "[t]he *Daubert* reliability factors are therefore highly relevant to the *Kelly* standard. Even aside from *Kelly*, these factors are relevant because 'the reliability and thus the relevance of scientific evidence is determined . . . under the requirement of Evidence Code section 350, that "[n]o evidence is admissible except relevant evidence."]' (*Id.*, at 598.) In other words, even apart from *Kelly*, scientifically unreliable evidence is irrelevant and hence inadmissible." (Id.)

///

Thus, while the claim presented to the California Supreme Court was centered on the trial court's failure to hold a <u>Kelly</u> hearing, and titled as such, within that claim Petitioner also argued, contrary to Respondent's assertion, that the admission of the handprinting evidence was erroneous and that the evidence should have been excluded. Accordingly, subclaim 2.E.7 is exhausted.

## 2. **Claim 7.E.1**

In the federal Petition, subclaim 7.E.1 is entitled: "The Electrophoresis[4] Evidence Should Have Been Excluded Under the *Daubert/Kumho* Standard." (ECF No. 45 at 255.) In the subclaim, Petitioner argues that "the electrophoresis evidence introduced against him at trial should have been precluded by *Daubert* and *Kumho* because the methodology used by Wraxall[5] was unreliable and scientifically invalid," and similar to the subclaim discussed above, points out that "[s]ince the *Daubert/Kumho* test is more liberal in favor of admissibility, any evidence that cannot satisfy *Daubert* also cannot satisfy *Kelly*, *a fortiori*. *Leahy*, 8 Cal. 4th at 595, 603." (Id. at 255-56 and n. 100.)

Petitioner contends that he exhausted this contention on direct appeal as part of Claim 4.4, "which discusses the *Daubert* and *Kumho* opinions and argues that the evidence would have been excluded under those standards and that the application of *Kelly* without the requirements of *Daubert/Kumho* fails to adequately protect a defendant's due process

---

[4] As described in the federal Petition, "Electrophoresis is a method for separation and analysis of macromolecules (including DNA, RNA, and proteins) based on their size and charge. Although PCR testing is now the most commonly used form of DNA analysis, electrophoretic testing was and is used in forensic science to isolate and compare DNA, blood proteins, and inorganic substances from crime scenes with suspects, victims, or standard reference material." (ECF No. 45 at 124, n. 49.)

[5] In earlier portions of Claim 7, Petitioner states that "Brian Wraxall's Serological Research Institute (hereinafter, "SERI") did ABO blood typing, electrophoresis for Group I, II, and III enzymes, and agglutination for the genetic markers Gm and Km," and also identifies Brian Wraxall as a "prosecution expert." (<u>See</u> ECF No. 45 at 244-45.)

rights."  (ECF No. 56 at 5-6.)  Petitioner also notes that the California Supreme Court specifically addressed this argument in the direct appeal opinion.  (Id. at 6, citing People v. Lucas, 60 Cal. 4th 153, 245 n.36 (2014)[6].)

Respondent notes that "[i]n the introductory paragraph in section 4.4 of the opening brief, Lucas identified his argument by stating 'the *Kelly* procedures employed in California violate the Due Process Clause of the federal constitution because the defense is precluded from presenting, and the judge from considering, any in limine evidence of unreliability other than general acceptance in the scientific community.'"  (ECF No. 56 at

---

[6] Both Petitioner and Respondent cite to the same footnote in the California Supreme Court's opinion on direct appeal as supporting their position.  That portion of the opinion reads as follows:

> Defendant also attacks the first prong of *Kelly* itself, claiming that this aspect of our analysis violates federal due process by undermining the trial court's gatekeeping function and barring relevant evidence at the pretrial stage.  Essentially, defendant argues that the first prong of *Kelly* improperly relies upon what the scientific community accepts as to the reliability of a technique, thereby supplanting the trial court's independent determination of reliability as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469.  But we have previously rejected such claims, and defendant offers no persuasive reason for reconsideration of our conclusion.  (*People v. Leahy* (1994) 8 Cal.4th 587, 593-604, 34 Cal.Rptr.2d 663, 882 P.2d 321 [holding that the *Kelly* prongs survived *Daubert* in this state].)  In addition, our opinion in *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 149 Cal.Rptr.3d 614, 288 P.3d 1237 did not, by using the term "gatekeeper," indicate any move away from the *Kelly* test toward the federal *Daubert* standard.  (*Sargon Enterprises, Inc. v. University of Southern California*, *supra*, 55 Cal.4th 747, 772, fn. 9, 149 Cal.Rptr.3d 614, 288 P.3d 1237.)

Lucas, 60 Cal. 4th at 245, n. 36.

4, quoting AOB vol. 4 at 1146.)  Respondent acknowledges that the Petitioner relied on both <u>Daubert</u> and <u>Kumho</u>, but maintains that "those cases were cited in support of an argument that California's *process* for determining the admissibility of certain evidence violated the Constitution; Lucas did not advance the independent argument he is trying to present now, which is that *Daubert* and *Kumho* required a finding that the evidence was erroneously admitted regardless of process."  (<u>Id.</u>)  Respondent argues that the state supreme court's resolution of that claim supports his contention.  (<u>Id.</u>, citing <u>Lucas</u>, 60 Cal. 4th at 245 n. 36.)

Argument 4.4 in the direct appeal is entitled "*Kelly* Violates the Federal Constitution to the Extent that the Judge has no Discretion to Consider Important Factors Relevant to Reliability." (ECF No. 35-91 at 106.)  In that claim, Petitioner asserted that under <u>Daubert</u> and <u>Kumho</u>, a trial judge has the discretion to consider a wider variety of factors in evaluating the reliability of scientific evidence than the <u>Kelly</u>/<u>Frye</u> test allows, and argued that "the *Kelly* test undermines the trial judge by allowing the admissibility determination to be conclusively controlled by the scientific community."  (<u>Id.</u> at 109.)  Petitioner asserted that: "A criminal defendant, or any other litigant for that matter, should have a due process right to adjudication of the reliability and admissibility of evidence under the full panoply of relevant evidentiary rules.  By suspending those rules as to one particular kind of evidence, *Kelly* violates the Due Process Clause of the Fourteenth Amendment," and specifically that "the application of the *Kelly* test and the resulting admission of the unreliable expert testimony based on the San Diego Sheriff's Office and SERI blood analysis testing deprived Lucas of a fair and reliable trial proceeding and violated his rights under the Sixth, Eighth and Fourteenth Amendments." (<u>Id.</u> at 110-11.)

Similar to the discussion concerning the prior disputed subclaim, while the argument presented to the California Supreme Court was framed as a process challenge concerning the trial court's application of <u>Kelly</u>, in the same claim Petitioner also clearly asserted that the trial court's admission of the contested evidence was erroneous and that the evidence should have been excluded.  Indeed, the California Supreme Court's direct appeal opinion

addressed, and rejected, that very argument.  See Lucas, 60 Cal. 4th at 244 ("He claims the erroneous admission of the Swanke blood analysis evidence deprived him of a fair and reliable trial proceeding and violated his rights under the Sixth, Eighth and Fourteenth Amendments.  The trial court properly rejected these challenges.")

In the federal Petition, Petitioner again contends that the admission of this evidence was erroneous and violated his constitutional right to due process, arguing that: "Both *Kelly/Frye* and *Daubert* are concerned about the reliability of expert testimony, and the admission of unreliable testimony not only has state law implications, it is a violation of federal due process."  (ECF No. 45 at 256.)  Thus, it is evident that Petitioner argued in both state and federal court that the erroneous admission of the electrophoresis evidence and expert testimony violated his federal due process rights.  As such, the Court finds subclaim 7.E.1 is exhausted.

**B.  Stay and Abeyance**

In Rose v. Lundy, 455 U.S. 509 (1982), the Supreme Court held that "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims," as the Court "reasoned that the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims," and requiring "total exhaustion" of a petitioner's claims in state court prior to hearing the federal habeas petition.  Rhines v. Weber, 544 U.S. 269, 273-74 (2005), citing Lundy, 455 U.S. at 518-19, 522.  In Rhines, the Supreme Court recognized that "[t]he enactment of AEDPA in 1996 dramatically altered the landscape for federal petitions," and that "[a]s a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims."  Id. at 275.

Therefore, the Rhines Court provided that in "limited circumstances" a procedure was available under which "a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims."

Id. at 275-77.  The Supreme Court held that stay and abeyance was appropriate where: (1) "there was good cause for the petitioner's failure to exhaust his claims first in state court," (2) the "unexhausted claims were potentially meritorious" and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  Id. at 277-78.

### 1. **Good Cause**

"The caselaw concerning what constitutes 'good cause' under Rhines has not been developed in great detail."  Dixon v. Baker, 847 F.3d 714, 720 (9th Cir. 2017), citing Blake v. Baker, 745 F.3d 977, 980 (9th Cir. 2014) ("There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust.")  In Pace v. DiGuglielmo, 544 U.S. 408 (2005), the Supreme Court indicated that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court."  Id. at 416, citing Rhines, 544 U.S. at 278.  Meanwhile, the Ninth Circuit previously held that "the application of an 'extraordinary circumstances' standard does not comport with the 'good cause' standard prescribed by Rhines."  Jackson v. Roe, 425 F.3d 654, 661-62 (9th Cir. 2005); see also Wooten v. Kirkland, 540 F.3d 1019, 1023-24 (9th Cir. 2008) (In Jackson, we stated that 'good cause' for failure to exhaust does not require 'extraordinary circumstances.'")

Petitioner offers several arguments to support his assertion of good cause for failing to exhaust his claims.  For instance, Petitioner asserts that he was represented by the same counsel on both direct appeal and in state habeas proceedings, and that counsel was ineffective in failing to present a number of his claims in state court proceedings.  (Mot. at 12-16.)  Petitioner points out that the Ninth Circuit has found ineffective assistance of prior counsel can satisfy the good cause requirement.  (Mot. at 10, citing Blake, 745 F.3d at 983.)  Petitioner also asserts that one of his claims is based on evidence newly discovered by current counsel and the Ninth Circuit has found good cause for failing to exhaust claims based on new evidence.  (Id. at 10-12, citing Gonzalez v. Wong, 667 F.3d 965, 980 (9th Cir. 2011).)  Petitioner also argues that the changes Cullen v. Pinholster, 563 U.S. 170 (2011), made to section 2254 provides good cause, because now "Lucas must not only

exhaust his claims, but he must also present all available evidence to the state court" before this Court can consider it. (Id. at 11, 16-17.) Finally, Petitioner notes that one of his claims relies on new case law, namely People v. Seumanu, 61 Cal.4th 1293, 1375 (2015) and Jones v. Davis, 806 F.3d 538 (9th Cir. 2015), and points out that those cases were not yet issued when the state habeas petition or reply were filed in the California Supreme Court. (Id. at 17-18.)

With respect to his first argument, Petitioner alleges that post-conviction counsel, who represented him on both direct appeal and in the state habeas proceedings, was ineffective in failing to present Claims 10.D, 12, 13.B.5, 13.B.6, 35.M, 50.H, 50.L, 52 and 53 to the California Supreme Court, and argues, citing Blake, that "Lucas should not be held accountable for prior counsel's failings." (Id. at 12-13, n.4.) Respondent contends that "blaming state counsel for failing to include the same claims in a previous state habeas petition or direct appeal as federal habeas counsel decides to include in the federal habeas petition would render stay-and-abey orders 'routine' in contravention of the intent expressed in *Rhines*," and argues that "[a] mere allegation that state post-conviction counsel was ineffective for overlooking an issue without more, would be contrary to the Supreme Court's directive in *Rhines* that stays be granted only in limited circumstances, and it would run counter to the purpose of AEDPA in promoting finality of state court convictions." (Opp. at 9-10.)

In Blake, the Ninth Circuit indeed held "that IAC [ineffective assistance of counsel] by post-conviction counsel can be good cause for a Rhines stay," and stated that "good cause under Rhines, when based on IAC, cannot be any more demanding than a showing of cause under Martinez [v. Ryan, 566 U.S. ___, 132 S.Ct. 1309 (2012)] to excuse state procedural default." Blake, 745 F.3d at 983-84. The Ninth Circuit stated that because the petitioner in that case met the procedural default cause standard, "we leave for another day whether some lesser showing will suffice to show good cause under Rhines," but intimated that the Supreme Court's language in Pace "suggests that this standard is, indeed, lesser than the cause standard" required to excuse a state procedural default. Id. at 984, n. 7.

The Court is cognizant of, and shares, the concerns raised by Respondent, but disagrees that a finding of good cause in this case would somehow render the stay and abeyance procedure "routine."  A finding of good cause in this case is not contrary to the intent expressed in <u>Rhines</u> that "stay and abeyance should be available only in limited circumstances."  <u>Id.</u>, 544 U.S. at 277.  Here, contrary to Respondent's contention, Petitioner does not offer a "mere allegation" that post-conviction counsel was ineffective, but instead articulates specific allegations supported by both argument and the record, as well as a declaration from post-conviction counsel conceding his failure to raise the cited claims and lack of strategic reason for that failure.  <u>See</u> <u>Blake</u>, 745 F.3d at 982 ("[G]ood cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure.")

For instance,[7] Petitioner argues that post-conviction counsel failed to raise a claim of ineffective assistance of trial counsel based on trial counsel's failure to renew a motion to sever, Claim 10.D in the federal Petition, despite the fact that the California Supreme Court clearly noted and identified that very failure in the direct appeal opinion.  (Mot. at 14-15, quoting <u>Lucas</u>, 60 Cal. 4th at 219) ("Defendant renewed his motion to sever after the prosecution presented its case-in-chief to the jury, and the trial court denied the motion. He did not renew this motion after the defense presented its case.  Thus, to the extent defendant argues that the court's pretrial consideration of defense evidence was relevant to show that a weak case was being joined with a strong one to his prejudice, that claim is forfeited because defendant passed on the opportunity to renew such a claim after presenting his evidence at trial.")  As noted above, the same attorney represented Petitioner

_____

[7] Petitioner alleges that prior counsel was ineffective in failing to raise Claims 10.D, 12, 13.B.5, 13.B.6, 35.M, 50.H., 50.L, 52 and 53, and post-conviction counsel's declaration similarly addresses each of these claims.  However, the Court's discussion will focus on a more limited number of the unexhausted claims, namely Claims 10.D, 12, 13.B.5 and 13.B.6, as the allegations and evidence provided with respect to those claims are sufficient to demonstrate good cause.

on both the direct appeal and in state habeas proceedings, and therefore, would presumably have been acutely aware of the claims raised in both proceedings, as well as the substance of the direct appeal opinion.

Petitioner also asserts that post-conviction counsel failed to raise several claims relating to the physical evidence and forensic testing which were also readily apparent from the record. (Id. at 13-14.) Specifically, Petitioner notes that Claim 12 in the federal Petition challenges the reliability of the hair evidence and trial testimony relating to that evidence and is based on the trial record as well as in part on a 2009 report[8] that was available prior to the time post-conviction counsel filed the state habeas reply brief in 2010. (Id. at 13-14.) Petitioner alleges that two other claims concerning the forensic evidence, specifically the failure to preserve crime scene evidence and evidence relating to another suspect, were "based on facts that were apparent from the record and should have been identified by prior counsel." (Id. at 13.) Citing to specific sections of the California Supreme Court's direct appeal opinion, Petitioner argues that: "[t]he reliability and handling of scientific evidence was a key issue at Lucas's trial. *See People v. Lucas*, 60 Cal. 4th 153, 221, 244 (2014) (e.g. failure to preserve fingerprint evidence, challenges to handwriting comparison evidence, admissibility of the Swanke blood evidence). The consolidation of cases was likewise a critical issue at the trial. *See id. at 218*." (Mot. at 15) (italics in original.)

Petitioner also offers the declaration of post-conviction counsel, who states that: "I did not intentionally omit or withhold any colorable claims, arguments or supporting

---

[8] In the federal Petition, Petitioner cites to and quotes from this study and report to argue that "[i]n the absence of confirmatory testing, microscopic comparative hair analysis which purports to show that a hair 'matches' or 'could have come from' a source (like the testimony put forth by Bailey and Simms [law enforcement criminalists who testified at Petitioner's trial] in this case) is now without support in the scientific community. *See* National Academy of Sciences Report, *Strengthening Forensic Science in the United States: A Path Forward* (2009) (hereinafter 'NAS Report') at 161 ('(There is) no scientific support for the use of hair comparisons for individualization in the absence of nuclear DNA.')." (ECF No. 45 at 292-93) (footnote omitted).

evidence from Lucas's appellate briefs or state habeas petition." (Ex. A to Reply at 1, ECF No. 66 at 11.)  Post-conviction counsel states that: "I have reviewed the claims deemed unexhausted and the additional evidence identified by federal habeas counsel.  These claims as presented in the federal petition are potentially meritorious and I did not intentionally omit them as part of a strategic or tactical decision."  (Id.)  With respect to Claim 10.D, post-conviction counsel states that "[t]he basis of this claim was apparent from the record.  I had no strategic or tactical reasons for failing to present this claim in Lucas's direct appeal."  (Id.)  With respect to Claims 13.B.5 and 13.B.6, counsel similarly states that "[t]he basis of claim [sic] was apparent from the record.  I had no strategic or tactical reasons for failing to present this claim [sic] in Lucas's direct appeal."  (Id. at 2, ECF No. 66 at 12.)  With respect to Claim 12, counsel states that: "I was aware of some scientific studies discrediting hair analysis testimony, but I did not consult any experts on this issue. I had no strategic or tactical reason for failing to present this claim in Lucas's state habeas petition."  (Id.)

"While a bald assertion cannot amount to a showing of good cause, a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust, will."  Blake, 745 F.3d at 982.  Here, Petitioner's allegation is supported by the declaration of post-conviction counsel acknowledging that the failure to raise the unexhausted claims was not strategic or tactical.  Moreover, post-conviction counsel specifically concedes that he was aware of studies questioning the reliability of hair comparison evidence, which was utilized in Petitioner's trial, but that he failed to investigate the issue by consulting experts on the matter.  The allegations are also supported by other evidence including but not limited to citation to the California Supreme Court's direct appeal opinion highlighting trial counsel's failure to re-raise the motion to sever (Claim 10.D), and reference and citation to a 2009 report concerning the unreliability of hair comparison evidence issued prior to the conclusion of Petition's state habeas briefing schedule (Claim 12).  Based on this showing, Petitioner's allegation that post-conviction counsel was ineffective in failing to raise the unexhausted claims on direct appeal or in the state habeas petition, supported by a

declaration from said counsel in both prior proceedings, suffices to demonstrate good cause for Petitioner's failure to exhaust those claims.[9]  The Court finds that Petitioner has satisfied the first element required for a stay under <u>Rhines</u>.

## 2. <u>Merit of the Unexhausted Claims</u>

In <u>Rhines</u>, the Supreme Court cautioned that "even if a petitioner had good cause for that failure [to exhaust], the district court would abuse its discretion if it were to grant him a stay when his exhausted claims are plainly meritless."  <u>Id.</u> at 277, citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")  At the same time, the Supreme Court also stated that "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  <u>Id.</u> at 278.

Petitioner asserts that "[g]iven the preliminary nature of a stay request, the standard for assessing potential merit should be similar to that provided in 28 U.S.C. § 2254(b)(2), which allows a district court to dismiss an unexhausted claim on the merits only under certain limited circumstances," and notes that pursuant to Ninth Circuit authority, "a district court may dismiss an unexhausted claim on the merits under § 2254(b)(2) 'only when it is perfectly clear that the applicant does not raise even a colorable federal claim.'" (Mot. at 18, quoting <u>Cassett v. Stewart</u>, 406 F.3d 614, 623-24 (9th Cir. 2005).)

A recent Ninth Circuit decision supports Petitioner's contention that the "plainly meritless" standard is akin to that of a "colorable" claim, as follows:

> A federal habeas petitioner must establish that at least one of his unexhausted claims is not "plainly meritless" in order to obtain a stay under *Rhines*, 544

---

[9] Because Petitioner has shown good cause for failing to exhaust based on allegations of ineffective assistance of post-conviction counsel, the Court need not address whether the other arguments Petitioner advances also suffice to demonstrate good cause.

U.S. at 277, 125 S.Ct. 1528. In determining whether a claim is "plainly meritless," principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless "it is perfectly clear that the petitioner has no hope of prevailing." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.* (citing *Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct 1198, 71 L.Ed.2d 379 (1982)).

Dixon, 847 F.3d at 722.

Respondent contends that "the standard must be something higher than merely raising a 'colorable federal claim,'" and argues that "[s]uch a low threshold would permit a stay in virtually every capital case," which would be contrary to Rhines's intent. (Opp. at 12.) While the Court acknowledges that this threshold does not appear high, it is also evident that merely showing a claim is not "plainly meritless," on its own, is insufficient to warrant a stay, nor would such a showing allowing a stay in "virtually every capital case." The Rhines Court specifically set forth *three* elements or factors for a district court to consider in evaluating whether stay and abeyance was appropriate in a particular case. Moreover, even if the "plainly meritless" element does not impose a high hurdle, it is clear that some claims, such as those based only on state law, would not meet the standard. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") In any event, this Court is compelled to follow and apply Ninth Circuit authority, which utilizes the "colorable federal claim" standard to analyze whether a claim is "plainly meritless." Dixon, 847 F.3d at 722, quoting Cassett, 406 F.3d at 624.

At a minimum, the Court finds that several of Petitioner's claims are not "plainly meritless." For instance, in Claim 10.D., Petitioner contends that trial counsel was ineffective for failing to re-raise the motion to sever after the conclusion of the defense case. In that claim, Petitioner contends that "[a]t the conclusion of the defense case, there

had been a number of developments which supported Lucas's argument that the cases never should have been consolidated in the first place," including evidence concerning Petitioner's alibis for the Santiago, Garcia, and Swanke homicides, evidence that the individual who committed the Strang/Fisher homicide was likely left-handed, pubic hair found on Swanke that did not match Petitioner or the victim, and evidence challenging the credibility of Santiago's identification of Petitioner. (ECF No. 45 at 275.) Petitioner asserts that "[t]hese additional facts would have strongly supported a renewed motion to sever, as they were relevant to show that the prosecution had improperly bootstrapped weak cases to stronger ones," and asserts that "the jury's acquittal in Garcia and mistrial in Strang/Fisher showed that it understood that the prosecution had charged Lucas on some cases with little to no evidence pointing to him as the perpetrator." (Id. at 275-76.) As Petitioner previously noted, the California Supreme Court specifically cited trial counsel's failure to renew this claim after the defense presentation. See Lucas, 60 Cal. 4th at 219. The standard required to sustain a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984) is high, as "a defendant must show both deficient performance and prejudice in order to prove that he has received ineffective assistance of counsel." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009), citing Strickland, 466 U.S. at 687. However, it is not insurmountable. Given the allegations, it is plausible that Petitioner could demonstrate trial counsel's failure to renew the motion to sever was both deficient and prejudicial.

Moreover, in Claim 12, Petitioner alleges that he was convicted based in part on faulty scientific evidence, specifically hair comparison evidence and testimony presented in his case. The claim relies in part, as discussed above, on a 2009 National Academy of Sciences Report which challenges the reliability of such evidence. The Ninth Circuit recently held that "habeas petitioners can allege a constitutional violation from the introduction of flawed expert testimony at trial if they show that the introduction of this evidence 'undermined the fundamental fairness of the entire trial.'" Giminez v. Ochoa, 821 F.3d 1136, 1145 (9th Cir. 2016), quoting Lee v. Houtzdale SCI, 798 F.3d 159, 162

(3rd Cir. 2015); see also Briceno v. Scribner, 555 F.3d 1069, 1077 (9th Cir. 2009) ("[E]vidence erroneously admitted warrants habeas relief only when it results in the denial of a fundamentally fair trial in violation of the right to due process."), citing McGuire, 502 U.S. at 67-68. This claim, grounded in the due process clause and premised on clearly established authority providing for habeas relief in the event Petitioner can demonstrate that the admission of this evidence violated his right to a fair trial, is also not "plainly meritless."

Finally, subclaims 13.B.5 and 13.B.6, which assert that the State failed to collect or preserve a number of items of physical evidence in Petitioner's case, are similarly grounded in clearly established law, as follows:

> Two Supreme Court cases set out the test we apply to determine when the government's failure to preserve evidence rises to the level of a due process violation. In *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984), the Court held that the government violates the defendant's right to due process if the unavailable evidence possessed "exculpatory value that was apparent before the evidence was destroyed, and (is) of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." In *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988), the Court added the additional requirement that the defendant demonstrate that the police acted in bad faith in failing to preserve the potentially useful evidence.

United States v. Cooper, 983 F.2d 928, 931 (9th Cir. 1993). As with the above claims, the Court cannot conclude that "it is perfectly clear that the petitioner has no hope of prevailing" on these two subclaims. Cassett, 406 F.3d at 624. Based on a review of these claims, it is clear to the Court that not all of Petitioner's unexhausted claims are "plainly meritless." As such, Petitioner meets the second element required under Rhines.

### 3.    Abusive Litigation Tactics or Intentional Delay

Finally, as a third factor to consider, the Supreme Court stated that "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." Rhines, 544 U.S. at 278. The Rhines Court recognized that "[i]n particular, capital petitioners might deliberately engage in dilatory tactics to prolong their

incarceration and avoid execution of the sentence of death." Id. at 277-78.

Respondent argues that there is an "inference" of such tactics because this is a capital case, noting that "[c]apital litigants have a clear and recognized incentive for delay," given their death sentence, and as such, "every day of delay is in effect a reprieve for Lucas." (Opp. at 13-14.)  In support of this argument, Respondent points out that "clearly nothing prevented Lucas from filing a successive habeas petition in state court as early as November 2016, or arguably earlier, as counsel clearly knew claims were being included in the petition to this Court that were not presented in state court."  (Id. at 14.)

Petitioner asserts that "[a] capital habeas petitioner does not engage in intentionally dilatory litigation tactics when he puts off filing unexhausted claims in state court (1) to comply with the local rules of the federal district court regarding exhaustion, *see Salcido*, 2013 WL 5442267 at *5, or (2) to comply with the California Supreme Court's requirement of *In re Reno*, 55 Cal. 4th 428, 447 n.3 (2012), to provide a copy of the federal district court order identifying unexhausted claims with his exhaustion petition."  (Mot. at 19-20.)

Indeed, the California Supreme Court stated in Reno that: "In the future, as a judicially declared rule of criminal procedure, we require that such exhaustion petitions clearly and affirmatively allege which claims were deemed by the federal court to be exhausted, and which were not.  Such allegations must be supported by 'reasonably available documentary evidence' (*People v. Duvall* (1995) 9 Cal.4th 464, 474, 37 Cal.Rptr.2d 259, 886 P.2d 1252), such as a copy of the district court's order."  In re Reno, 55 Cal. 4th 428, 447, n.3 (2012); see also id. at 443 ("As explained in more detail below, such petitions must clearly and frankly disclose . . . (d) which claims were deemed unexhausted by the federal court and are raised for the purposes of exhaustion.  This last disclosure must be supported by a copy of the federal court's order.")

In this case, as noted above, while the parties agreed that a number of claims in the federal Petition were unexhausted, they disagreed on the exhaustion status of two claims and asked the Court to issue a ruling on whether those two claims were exhausted.  The Court's decision on those two claims is contained in this very Order.  Given this dispute

and the California Supreme Court's recently issued rule, it is reasonable, and not at all dilatory, for Petitioner to await this Court's decision and present all unexhausted claims to the state court in a single exhaustion petition.

The Court is unpersuaded by Respondent's general assertion that there is somehow an "inference" of an intent or motive for Petitioner to delay in this case simply because he is a capital prisoner. In <u>Rhines</u>, the Supreme Court indicated that a capital petitioner "might" engage in such behavior, which "could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review," and advised that "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." <u>Id.</u>, 544 U.S. at 278. Here, as discussed above, it is evident that the cited delay in Petitioner's return to state court is not attributable to an improper intent or motive, given the California Supreme Court's recent rule concerning exhaustion petitions and the two disputed claims. Thus, in the absence of any showing that Petitioner has engaged in behavior evincing an intent to delay, the Court concludes that this element does not weigh against granting a stay. <u>Id.</u>

### III. CONCLUSION

For the reasons discussed above, the Court **FINDS** that subclaims 2.E.7 and 7.E.1 are **EXHAUSTED**, and **GRANTS** Petitioner's motion to stay the federal case pending exhaustion of state court remedies.

In <u>Rhines</u>, the Supreme Court instructed that "district courts should place reasonable time limits on a petitioner's trip to state court and back," and indicated approval of a procedure allowing 30 days to commence state court proceedings and 30 days to return to federal court at the conclusion of the state court exhaustion proceedings. <u>See id.</u> The local rules of this district provide for a similar timeline in the event stay and abeyance is granted. <u>See</u> CivLR HC.3(g)(5) ("If the petition indicates that there are unexhausted claims from which the state court remedy is still available, petitioner may be granted a thirty (30) day period in which to commence litigation on the unexhausted claims in state court.")

*///*

In accordance with these timelines, Petitioner will present his unexhausted claims to the state court within 30 days of the filing date of this Order, and will file proof of that submission in this Court. Thereafter, Petitioner will file a brief report with this Court every 90 days informing the Court of the status of the state court petition. During the state court proceedings, all proceedings on the federal petition will be stayed. Finally, any amended Petition in this case must be filed within 30 days of the state court's resolution of his state habeas petition. If Petitioner does not commence exhaustion proceedings in state court or file an amended Petition within the provided time frames, the stay and abeyance shall be lifted, and the matter shall proceed in this Court on the original Petition.

**IT IS SO ORDERED.**

Dated: May 5, 2017

Hon. Gonzalo P. Curiel
United States District Judge

15cv1224